ARMSTRONG, P. J.
*331 The question in this workers' compensation case is the level of cooperation required to avoid a "noncooperation denial" for a worker whose benefits have been temporarily suspended for noncooperation. See ORS 656.262(15) (setting forth procedures for suspension and denial of benefits based on noncooperation). We conclude that ORS 656.262(15) requires that the worker "reasonably cooperate" with the employer's investigation. On employer's petition for judicial review, we conclude that the board erred in its application of the statute in this case because the board applied an "any effort" to cooperate standard. We therefore reverse and remand for reconsideration. ORS 183.482(7), (8) ; ORS 656.298(7).
The pertinent facts as found by the board are largely undisputed. Claimant notified employer on August 9, 2014, that he had sustained an injury during an altercation at work. An injured worker has a duty to cooperate with an employer's investigation of the worker's claim for compensation. ORS 656.262(14)(a) provides, as relevant:
"Injured workers have a duty to cooperate and assist the insurer or self-insured employer in the investigation of claims for compensation. Injured workers shall submit to and shall fully cooperate with personal and telephonic interviews and other formal or informal information gathering techniques."
Employer notified claimant of a deposition scheduled for September 4, 2014. Claimant received the notice but did not attend. Employer requested that the Workers' Compensation Division of the Department of Consumer and Business Services issue an order suspending claimant's benefits pursuant to ORS 656.262(15), which provides, as relevant:
"If the director finds that a worker fails to reasonably cooperate with an investigation involving an initial claim to establish a compensable injury or an aggravation claim to reopen the claim for a worsened condition, the director shall suspend all or part of the payment of compensation after notice to the worker."
*332 The applicable version of OAR 436-060-0135 (Jan. 1, 2010) also authorizes the suspension of benefits when a worker fails to cooperate with an investigation:
"(1) When the worker refuses or fails to cooperate in an investigation of an initial claim for compensation, * * * the division will suspend compensation under ORS 656.262(15) by order under conditions set forth in this rule."
In response to employer's request for suspension, on September 16, 2014, and again on September 19, the division sent claimant a notice that his benefits would be suspended after five days if he did not contact the division or employer's claims administrator, Sedgwick CMS, and cooperate in the investigation of his claim. Claimant had moved and did not receive the notices.
On September 30, 2014, having received no response from claimant, the division issued an order under ORS 656.262(15) suspending claimant's compensation. The order provided that the division consented to employer's request to suspend benefits and that the suspension would continue "until the worker cooperates with the insurer's investigation of the claim by contacting the insurer to arrange and submit to an interview."
If a worker does not cooperate within 30 days of the date of a notice of suspension, the insurer may deny the claim. ORS 656.262(15) provides:
"If the worker does not cooperate for an additional 30 days after the notice, the insurer or self-insured employer may deny *413 the claim because of the worker's failure to cooperate."
OAR 436-060-0135(9) (Jan. 1, 2010) provided:
"If the worker makes no effort to reinstate compensation within 30 days of the date of the notice, the insurer may deny the claim under ORS 656.262(15) and OAR 436-060-0140(10)."
In the meantime, after claimant failed to attend the scheduled deposition but before employer moved to suspend claimant's benefits, claimant had initiated an email communication with the department's Ombudsman for Injured Workers. In an email of September 6, 2014, claimant stated, "I will submit whatever is needed to establish this claim." In *333 a separate email to the ombudsman on the same day, claimant asked, "What is my next step?"
The ombudsman responded by asking claimant to provide information about his employment so that she could research his claim. On October 1, 2014, the ombudsman emailed claimant a copy of the September 16, 2014, notice, and advised him to contact the Sedgwick claim adjuster, Krech, at a telephone number provided.
On October 1, 2014, and again on October 2, claimant emailed Sedgwick at its corporate headquarters and acknowledged receipt of the September 16, 2014, notice. Claimant misrepresented in his email that he had not been aware of the September 4, 2014, deposition and stated that he had been willing to cooperate with the investigation.
On October 16, claimant signed a medical release that had been forwarded to him by the ombudsman and once again emailed Sedgwick at its corporate headquarters, requesting an update on his claim. He asked, "Is there anything else that a reasonable person could do after being attacked, and injured while on the job? If so-please advise."[1] The ombudsman also communicated directly with Krech, who replied on October 16 that the claim was in "deferral status." The ombudsman communicated that information to claimant. Sedgwick forwarded claimant's October 16 email to Krech on October 20, 2014.
Rather than respond to claimant's or the ombudsman's October 16 email inquiry, Sedgwick sent claimant a noncooperation denial, and claimant filed a request for hearing. Claimant's attorney conceded at the hearing that *334 claimant had not "fully and completely cooperated" with the investigation. But she contended that, before September 30, claimant's failure to cooperate had been beyond his control because of cognitive and memory problems, and that, after the September 30 notice of suspension, claimant had attempted to cooperate, but employer had ignored his attempts.
An administrative law judge (ALJ) set aside employer's noncooperation denial. The ALJ found that, before the September 30 suspension, employer's demands had been reasonable, claimant had not cooperated, and claimant's noncooperation before September 30 was not due to any reason beyond his control. But the ALJ found that, by his October 16 email, claimant put employer on notice that he was willing to cooperate. The ALJ found that employer's decision to ignore claimant's communications was unreasonable, and he set aside the denial and remanded the claim for acceptance or denial of benefits.
In an en banc order, the board affirmed the ALJ's order and adopted his findings. The board found that, although claimant's email of October 16 did not specifically address arranging or submitting to an interview as required by the notice of suspension, *414 the email was sufficient to advise employer that claimant was willing to cooperate.
The order also addressed employer's failure to respond to claimant's inquiries. Citing the division's administrative rules, the board noted that, if a claimant cooperates after a request for suspension, the employer has an obligation to notify the division, OAR 436-060-0135(7). Citing OAR 436-060-0135(9), the board stated that "[i]f the worker makes no effort to reinstate compensation within 30 days of the suspension notice, then a carrier is authorized to deny the claim." (Emphasis in original.) The board found that "employer was aware of claimant's attempts to cooperate, but elected to wait for the 30 days to expire and issue a 'noncooperation' denial instead of responding to his inquiry."
The board's discussion reflects its view that a claimant cooperates for purposes of ORS 656.262(15) if the *335 claimant makes "any effort" to reinstate benefits. In affirming the ALJ, the board concluded:
"[T]he record persuasively establishes that claimant contacted the employer within 30 days of the [division's] suspension notice asking what actions he needed to take. Thus, the prerequisites for the issuance of a non-cooperation denial were not satisfied. Accordingly, the employer's denial is procedurally invalid."
Having determined that the denial was procedurally invalid, the board did not address employer's contention that claimant had a burden to show that he had "fully and completely" cooperated with employer's investigation.
On judicial review, employer does not challenge the board's finding that that employer had failed to respond to claimant's communications. Rather, employer contends that the board's finding that claimant had cooperated is not supported by substantial evidence, and its determination that claimant's cooperation was sufficient cannot be squared with the requirement in ORS 656.262(15) that a noncooperation denial can be overturned only by a showing that "the worker fully and completely cooperated with the investigation." Employer further contends that the provision of OAR 436-060-0135(9) on which the board relied to conclude that a noncooperation denial can be issued only if the worker "makes no effort" to cooperate is not consistent with the statute's "fully and completely" standard of cooperation. Employer does not argue that a claimant must have actually "fully and completely" fulfilled the requested action within the 30 days, but that, at a minimum, the claimant must have expressed a willingness to fully and completely cooperate, such as by requesting that the deposition or interview be rescheduled. That did not occur here.
The question thus presented is what type of cooperation by a claimant is sufficient to prevent the issuance of a denial of a claim after the suspension of benefits. That is a question of statutory construction that we address under the familiar principles set out in PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993), and State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). We begin by attempting to discern the meaning of the statute *336 most likely intended by the legislature, as reflected in the text in context and any relevant legislative history. Id.
ORS 656.262(14)(a) provides:
"Injured workers have a duty to cooperate and assist the insurer or self-insured employer in the investigation of claims for compensation. Injured workers shall submit to and shall fully cooperate with personal and telephonic interviews and other formal or informal information gathering techniques."
ORS 656.262(15) provides:
"If the director finds that a worker fails to reasonably cooperate with an investigation involving an initial claim to establish a compensable injury or an aggravation claim to reopen the claim for a worsened condition, the director shall suspend all or part of the payment of compensation after notice to the worker. If the worker does not cooperate for an additional 30 days after the notice, the insurer or self-insured employer may deny the claim because of the worker's failure to cooperate. The obligation of the insurer or self-insured employer to accept or deny the claim within 60 days is suspended during the time of the worker's noncooperation. After such a *415 denial, the worker shall not be granted a hearing or other proceeding under this chapter on the merits of the claim unless the worker first requests and establishes at an expedited hearing under ORS 656.291 that the worker fully and completely cooperated with the investigation, that the worker failed to cooperate for reasons beyond the worker's control or that the investigative demands were unreasonable. If the Administrative Law Judge finds that the worker has not fully cooperated, the Administrative Law Judge shall affirm the denial, and the worker's claim for injury shall remain denied. If the Administrative Law Judge finds that the worker has cooperated, or that the investigative demands were unreasonable, the Administrative Law Judge shall set aside the denial, order the reinstatement of interim compensation if appropriate and remand the claim to the insurer or self-insured employer to accept or deny the claim."
As employer understands the statutes, when, as here, a noncooperation denial is issued, it may be overturned only if the claimant establishes at an expedited hearing one of three circumstances described in the statute: that the claimant *337 "fully and completely" cooperated with the investigation, that the worker failed to cooperate for reasons that were beyond the claimant's control, or that the employer's investigative demands were unreasonable. See Hopper v. SAIF , 265 Or. App. 465, 469, 336 P.3d 530 (2014) (applying statute). Here, employer asserts, none of those circumstances has been established.
As noted, claimant acknowledges that he has not cooperated "fully and completely," and the board found that claimant's failure to cooperate was not due to a reason beyond his control. But, in claimant's view, the burden to show "full and complete" cooperation arises only when the claimant challenges a procedurally valid denial. During the period of suspension, claimant asserts, a claimant's duty is to "reasonably cooperate," as set forth in the first sentence of the statute. Claimant contends that, when a denial has been issued improperly because the claimant had in fact reasonably cooperated within the 30 days, then the denial is procedurally invalid.
Employer replies that if, as the board determined, a denial can be invalidated preliminarily on a procedural ground based on a standard of cooperation less than the cooperation required to overturn a noncooperation denial, then the administrative review described in ORS 656.262(15) is superfluous. In employer's view, when a denial has been issued, any question concerning the denial's invalidity, including its procedural validity, must be addressed in the context of the review described in the statute.
We agree with claimant that the board has authority under ORS 656.262(15) to make a preliminary determination as to the procedural validity of a denial for a failure to cooperate and, if the board determines that the denial is procedurally invalid, it should set it aside. The statute provides for review of a noncooperation denial, which implicitly encompasses a review of any procedural flaws in the issuance of the denial. We also agree with claimant that the proper standard for evaluating a worker's cooperation during a period of suspension is whether the worker reasonably cooperated. Looking at the structure of ORS 656.262(15), it appears to set forth three procedural stages. The first stage, *338 described in the first sentence of ORS 656.262(15), provides for the suspension of benefits based on a failure to reasonably cooperate. The second stage permits the denial of the claim based on noncooperation if the worker continues for 30 days to fail to reasonably cooperate.
The third procedural stage is the challenge to a noncooperation denial. At that point, the required level of cooperation increases. To set aside a properly issued denial, the statute requires the claimant to show one of three circumstances-that the claimant "fully and completely" cooperated with the investigation, that the worker failed to cooperate for reasons that were beyond the claimant's control, or that the employer's investigative demands were unreasonable. Hopper , 265 Or. App. at 469, 336 P.3d 530. But, we agree with claimant that if, as a preliminary matter, it is determined that the denial is procedurally invalid because the *416 worker reasonably cooperated during the 30-day suspension period, then the duty never arises to establish that the worker "fully and completely" cooperated. That burden arises under ORS 656.262(15) only when the claim has been properly denied based on the claimant's failure to reasonably cooperate.
Thus, the board correctly determined that it could make a preliminary determination as to whether employer's denial of the claim was procedurally correct. In support of its conclusion that the claim could not be denied for claimant's lack of cooperation, the board found that claimant had contacted employer and asked what action needed to be taken and had thereby expressed a willingness to cooperate. But it appears, based on the board's citation to OAR 436-060-0135(9), that the board understood that "any effort" by a claimant to reinstate benefits was sufficient to express a willingness to cooperate. A standard of any effort does not necessarily comport with the standard of reasonable cooperation that we have concluded is necessary to avoid a noncooperation denial. The determination whether claimant reasonably cooperated is one that the board should make in the first instance. We therefore conclude that the case must be remanded for a determination whether claimant's conduct after the division's issuance of the suspension order reflected reasonable cooperation. In view of our conclusion, we do not reach employer's second assignment of error in *339 which it contends that the board's finding that claimant made efforts to cooperate is not supported by substantial evidence.
Reversed and remanded.

Claimant's full October 16 email to employer's claim administrator stated:
"I am in need of an update on my claim for workers [sic ] compensation. I believe that I have fulfilled all of my required documentation, authorized you to confirm with the Portland Veterans Hospital ER regarding the injuries of the attack, provided a police report number, and even sent you the Portion from Hilton (although it was left unsigned by them) as soon as I received it. If this will help in any way-I give you permission to my medical records regarding the injuries that I suffered from the attack from the Spokane, WA hospital (I wanted a second opinion), and they support Portland's findings, but they have increased concerns regarding the head trauma.
"Is there anything else that a reasonable person could do after being attacked, and injured while on the job? If so-please advise."